UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT VELASQUEZ ACOSTA,<br><br>Defendant. | No.  1:04-cr-05278-DAD<br><br>ORDER GRANTING DEFENDANT'S MOTION AND AMENDED MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(2)<br><br>(Doc. Nos. 392, 401) |

**INTRODUCTION**

On April 24, 2015, defendant Robert Velasquez Acosta filed a pro se motion seeking a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(2). (Doc. No. 392.) Pursuant to stipulation and in keeping with a General Order of the court, the previously assigned District Judge referred the matter to the U.S. Probation Office and to the Office of the Federal Defender for review. (Doc. No. 394.) Thereafter, on September 4, 2015, the court appointed counsel to represent defendant in connection with his motion for relief. (Doc. Nos. 397 & 398.) On November 6, 2015, counsel filed an amended motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2) on behalf of defendant. (Doc. No. 401.) On November 20, 2015, the government filed its opposition to the motion (Doc. No. 402) and on December 7, 2015, defendant filed his reply. (Doc. No. 404.) On February 8, 2016, the court heard oral argument on defendant's motion. Assistant United States Attorney Kathy Servatius appeared on behalf of the

United States and attorney John Balazs appeared telephonically on behalf of the defendant. After hearing oral argument the court took the motion under submission for decision. (Doc. No. 406.)

Through his amended motion, petitioner seeks a reduction in his 180 month sentence imposed on May 1, 2006, in this case. Specifically, defendants seeks relief on the basis of Amendment 782 to the U.S. Sentencing Guidelines (November 1, 2014), which revised the Drug Quantity Table in § 2D1.1 of the U.S. Sentencing Guidelines ("USSG") and reduced by two levels the offense level applicable to many drug trafficking offenses. (Doc. Nos. 392, 401.) The government opposes defendant's amended motion, arguing that even though at the time of sentencing the court made only a finding that in excess of 1.5 kilograms of actual methamphetamine was involved in the conspiracy count to which defendant pled, in fact, the actual amount of methamphetamine involved exceeded 4.5 kilograms thereby rendering him ineligible for a reduction in his sentence under Amendment 782. (Doc. No. 402.) Defendant responds by contending that this court may only consider the evidence and information before the court at the time defendant's sentence was originally imposed and which resulted in the determination that quantity of methamphetamine involved in his offense was in excess of 1.5 kilograms. (Doc. No. 404.) Based upon the sentencing court's original drug quantity finding, defendant argues the court should now grant the requested reduction in his sentence.

For the reasons explained below and because the government's argument relies upon evidence and information not before the court at the time of defendant's 2006 sentencing, defendant will be granted the requested relief.

**FACTUAL BACKGROUND**

On February 1, 2006, the day his trial was set to commence, defendant Roberto Acosta entered into a plea agreement with the government pursuant to which he agreed to plead guilty to Count One of a Superseding Indictment charging him with conspiracy to manufacture and distribute more than 50 grams of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1). (Doc. No. 276 at 1-2.) Under the U.S. Sentencing Guidelines (USSG) in effect at the time, offenses involving 1.5 kilograms or more of actual methamphetamine qualified for a base offense level of thirty eight. *See* USSG § 2D1.1(c)(1) (2005). As part of his plea agreement,

defendant agreed to both that base offense level and a three-point reduction for acceptance of responsibility, resulting in an adjusted offense level under the Sentencing Guidelines of thirty five. (Doc. No. 276 at 2:10–12.) His plea agreement further provided that his criminal history category was II[1] which, based upon the 2005 edition of the USSG Manual, resulted in a guideline range calling for a sentence of 188—235 months imprisonment. (*Id*.) However, in their plea agreement the parties both agreed to recommend that a sentence of 180 months imprisonment be imposed. (*Id*. at 2, 4.) Finally, the factual basis for defendant's guilty plea simply provided that the drug laboratory in question "had the capacity to manufacture and/or had manufactured in excess of 1.5 kilograms of actual methamphetamine." (*Id*. at 5:15–16.)[2]

---

[1] In the presentence report the probation officer concluded that defendant's criminal history category was III, resulting in a guideline range calling for a term of imprisonment of between 210 to 262 months. However, it is undisputed that in keeping with the plea agreement of the parties, the sentencing judge found that a category III overstated defendant's criminal history and made a finding that a criminal history category II was appropriate, resulting in a guideline range calling for 188—235 months imprisonment.

[2] The factual basis for defendant's plea as set forth in the plea agreement and as adopted by him at the time of his entry of plea provided in its entirety as follows:

> Beginning at a time unknown and continuing to no later than October 4, 2004, in the County of Stanislaus, State and Eastern District of California, and elsewhere, the defendant did knowingly and intentionally conspire with Javier Escamillia, Eliazar Orosco Sanchez, Daniel Casillas, and other individuals to manufacture and distribute methamphetamine.
>
> On September 18, 2004, the defendant, Javier Escamilla Magana, and other individuals proceeded to purchase items which were needed to make methamphetamine, such as pseudoephedrine, bed sheets and kitty litter (the sheets are used to wring liquid from the methamphetamine after it is cooked and the kitty litter is used to disguise the fumes generated by the manufacturing process). The defendant participated in this activity by transporting pseudoephedrine from Los Angeles and purchasing the items described above, knowing that they would be used to make methamphetamine. Daniel Casillas, Eliazar Orosco and one other individual knowingly commenced extracting pseudoephedrine from pseudoephedrine tablets (or knowingly assisted as other individuals did so) as part of the initial process of manufacturing methamphetamine. The laboratory had the capacity to manufacture and/or had manufactured, in excess of 1.5 kilograms of actual methamphetamine.

(Doc. 276 at 5:6–16.)

On May 1, 2006, defendant was sentenced pursuant to his previously entered plea of guilty. (Doc. Nos. 306–7.) In the presentence report ("PSR"), the Probation Officer found that "the defendant conspired with codefendants to manufacture in excess of 1.5 kilograms of actual methamphetamine" resulting in a base offense level of 38 and a total adjusted offense level of 35 under the USSG. (PSR at 7-8.) In describing defendant's offense conduct, the PSR also stated as follows:

> Later, during the evening of September 18, 2004, Acosta and Magana were observed driving to a residence located at 5319 Berkeley Avenue in Denair, California. They then returned to the residence located at Rosemore Avenue. Later during the execution of a search warrant at the residence located on Berkeley Avenue, agents seized an operational amphetamine extraction/ methamphetamine manufacturing laboratory. Arrested at the residence on Berkeley Avenue was Daniel Casillas Sanchez (Sanchez) and Eliazar Roberto Orosco-Sanchez (Orosco-Sanchez). Agents estimated that the laboratory had a production capacity of approximately 30 pounds of methamphetamine. Among the numerous chemicals and equipment seized by agents were approximately three 20 pound bags of "Cat Pride" cat litter which was recovered from the laboratory site.
>
> On September 19, 2004, agents executed a search warrant at the residence located at 805 Rosemore Avenue. At this location, agents seized 59 gallons of Coleman camp fuel and 10 gallons of denatured alcohol from inside the garage of the house. Agents also seized approximately 9 pounds of finished methamphetamine which was hidden in an air-conditioning vent inside the house.
>
> At the residence, agents seized approximately $4,600 from the master bedroom dresser. Agents arrested Acosta and Gonzalez as they were departing the residence prior to the execution of the search warrant.

(PSR at 6–7.)

Finally, in the "justification" section of the report, the PSR stated:

> On September 18, 2004, the defendant and his girlfriend were observed purchasing numerous items used in the manufacture of methamphetamine. The defendant transported those items to homes which were later found to contain operational methamphetamine manufacturing laboratories. Agents seized approximately nine pounds of finished methamphetamine which was hidden in an air conditioning vent inside one of the homes.
> The defendant is facing a substantial period of incarceration as the guidelines range [for criminal history category III] in this case is 210 to 262 months. When considering the sentence, it is important to take into account that the offense involved a very large drug

4

> conspiracy with multiple laboratory sites. The potential capacity of the laboratories and the substantial amount of actual methamphetamine produced, further enhances the seriousness of this offense.

(*Id*. at 15.)

In imposing the 180 month sentence, the sentencing judge adopted the presentence investigation report without change but for the criminal history category determination, sentenced defendant in keeping with the mandatory minimum sentence for the count of conviction and departed from the advisory guideline range for reasons authorized by the USSG and pursuant to the plea agreement of the parties which called for the departure. (Judgment, Statement of Reasons.)[3] The sentencing judge did not make any specific finding that the defendant was responsible for the entire quantity of methamphetamine that the drug laboratory referred to in his PSR was allegedly capable of producing.

**LEGAL STANDARDS**

"As a general matter, courts may not alter a term of imprisonment once it has been imposed." *United States v. Spears*, 824 F.3d 908, 912 (9th Cir. 2016) (quoting *United States v. Hicks*, 472 F.3d 1167, 1169 (9th Cir. 2007)). Creating an exception to this rule, "[s]ection 3582(c)(2) authorizes district courts to modify an imposed sentence 'in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission.'" *United States v. Dunn*, 728 F.3d 1151, 1155 (9th Cir. 2013) (quoting 18 U.S.C. § 3582(c)(2)). Hearings on motions brought pursuant to § 3582(c)(2) are to be "limited [in] nature," and are not "plenary resentencing proceedings." *Dillon v. United States*, 560 U.S. 817, 818, 827 (2010). Consideration of a reduction in sentence pursuant to § 3582(c) follows a two-step inquiry. *Dunn*, 728 F.3d at 1155 (citing *Dillon*, 560 U.S. at 825–26). The district court must first determine whether the defendant is eligible for a sentence modification under the policy statements adopted by the Sentencing Commission as well as the extent of any reduction authorized. *Dillon*, 560 U.S. at 827. In doing

---

[3] The sentencing judge thus imposed a sentence in keeping with the plea agreement of the parties which called for a departure below the advisory sentencing guideline range to a sentence of 180 months in the custody of the Bureau of Prisons. (Doc. Nos. 276 at 2:10–14 and 4:14; 307 at 2.)

so, the court must "determine the amended guideline range that would have been applicable to the defendant" if the amendment had been in effect at the time of the original sentencing. *Id*. If the district court determines that the defendant is eligible for a sentence reduction, then under the second step of the inquiry the district court is to consider the § 3553(a) sentencing factors in deciding whether, in the exercise of its discretion, a reduction in sentence is warranted under the circumstances. *Id*.

As to the first step inquiry in this case, the Sentencing Commission promulgated Amendment 782 in 2014, which generally revised the Drug Quantity Table and chemical quantity tables across drug and chemical types. The Commission also made Amendment 782 retroactively applicable to previously sentenced defendants. *See* USSG § 1B1.10(d); 79 Fed. Reg. 44,973. In generally lowering sentencing guideline ranges, Amendment 782 also added a higher drug quantity category at the top of the Drug Quantity Table (applicable to those cases where the amount of methamphetamine is in excess of 4.5 kilograms), and shifted all other categories down two levels. *See* USSG § 2D1.1(c)(1) (2014).

**PARTIES' ARGUMENTS**

In its opposition to defendant's motion for a reduction in his sentence, the government concedes that neither the PSR nor the plea agreement attempted to quantify the amount of methamphetamine defendant Acosta may have been responsible for in connection with the criminal conspiracy of which he was convicted, other than to find that it was more than 1.5 kilograms. (Doc. No. 402 at 9:24–10:4.) At the hearing on the pending motion, the government reiterated this position. However, the government argues that the court should now consider additional evidence and information, not considered by the judge in imposing sentence on this defendant, in order to find that the drug quantity for which he was responsible exceeded 4.5 kilograms of actual methamphetamine, thus making him ineligible for a sentence reduction. In this regard, the government argues that although "[t]he Ninth Circuit has not addressed how to proceed on a Section 3582(c)(2) motion where the parties did not attempt to quantify the entire amount of the controlled substance involved," courts in other circuits have held that district courts may make new factual findings so long as they are not inconsistent with the original findings of

the sentencing court. (Doc. No. 402 at 9:11–17) (citing *United States v. Davis*, 682 F.3d 596, 618 (7th Cir. 2012); *United States v. Hall*, 600 F.3d 872, 876 (7th Cir. 2010); *United States v. Jackson*, 365 F. App'x 690, 691 (7th Cir. 2010) (unpublished); *United States v. Woods*, 581 F.3d 531, 538–39 (7th Cir. 2009)).

At the hearing on the pending motion the government went further, arguing that under the holding in *United States v. Sprague*, 135 F.3d 1301 (9th Cir. 1998), the sentencing court is authorized to both consider new evidence and to make new factual findings in ruling on a motion brought under § 3582(c)(2). The government notes that in *Sprague*, the Ninth Circuit remanded to the district court a § 3582(c)(2) motion based upon Amendment 484 to the Sentencing Guidelines (November 1, 1993),[4] with instructions to the district court that it "may consider the supplemental declaration by the defendant's expert" and "calculate the base offense level by other evidence." *Id*. at 1306–07. In support of this argument the government also points to the decision in *United States v. Rios*, 765 F.3d 133 (2nd Cir. 2014) (determining that the district court properly held an evidentiary hearing to make a drug quantity finding which supported the denial of a motion for relief under § 3582(c)(2) based upon 2007 and 2011 amendments to the USSG).

Based on these arguments, the government now asks this court to consider evidence that the approximately nine pounds of methamphetamine seized by authorities from 805 Rosemore Avenue and referred to in defendant's PSR, actually dried to a net weight of 2.683 kilograms, had a 98% purity level and thus constituted 2.629 kilograms of actual methamphetamine. The government also seeks to have the court now find, based upon the opinion of an expert forensic chemist submitted in connection with a co-defendant's case in July of 2007, that the 9.355 grams of pseudoephedrine seized from the Berkeley Avenue drug laboratory represented a production capacity of between 4.677 kilograms (assuming a 50% conversion rate) and 8.656 kilograms (assuming a 100% conversion rate) of actual methamphetamine. (*Id*. at 6-7, 11:7–21.) Based upon this evidence not presented at the time of defendant's sentencing, the government argues

---

[4] Amendment 484 defined the term "mixture or substance" as used in the Sentencing Guidelines for the purpose of calculating base offense levels. As defined, that term does not include "materials that must be separated from the controlled substance before the controlled substance can be used."

7

1  that the amount of actual methamphetamine involved in defendant's offense was between 7,306

2  grams and 11,285 grams and, in any event, was in excess of 4.4 kilograms. (*Id*.)

3  In the alternative, the government argues that even if this modification court may not

4  consider evidence or information not before the court at the time of sentencing to determine the

5  quantity of actual methamphetamine involved in defendant's offense, the additional evidence and

6  information presented in this case should be considered by the court at the second step of

7  analyzing defendant's motion for relief under § 3582(c)(2).[5]

8  Defendant counters that, based upon the evidence and information before the court at the

9  time of sentencing, the government cannot meet its burden of proving that his offense involved

10  4.5 kilograms or more of actual methamphetamine. Defendant argues that this court is limited to

11  considering only that evidence which was before the court at the time of sentencing on May 1,

12  2006, and cannot consider the government's additional evidence in ruling upon his motion for a

13  sentence reduction. (Doc. No. 404 at 4:1–5:24.) Defendant points to the decisions of other

14  circuits to support this contention. (*Id*. at 4:12–24) (citing *United States v. Valentine*, 694 F.3d

15  665, 673–74 (6th Cir. 2012); *United States v. Battle*, 706 F.3d 1313, 1318–19 (10th Cir. 2013);

16  *United States v. Hamilton*, 715 F.3d 328, 340 (11th Cir. 2013)).

## ANALYSIS

18  For the reasons set forth below, the court concludes that when a defendant seeks a

19  reduction in sentence under § 3582(c)(2) based upon Amendment 782 to the USSG, only the

20  evidence and information before the court, as well as the findings made, at the time of the original

21  sentencing may be considered. The court also concludes that the decision in *Sprague* is not

22  controlling with respect to the resolution of this issue because its reasoning in this context has

23  been undermined by the Supreme Court's subsequent decision in *Dillon v. United States*, 560

24  U.S. 817 (2010). Moreover, even if *Sprague* survived the Supreme Court's decision in *Dillon*, it

25  is distinguishable from the present case in that it involved a § 3582(c)(2) motion premised on

26  USSG Amendment 484 rather than a motion based upon Amendment 782. Here, the evidence

---

[5] As noted above, it is at that point the court is called upon to consider the applicable § 3553(a) factors in determining whether a reduction in sentence is warranted under the circumstances.

and information considered by the sentencing judge, defendant's PSR and plea agreement, does not support a finding that defendant was responsible for in excess of 4.5 kilograms of actual methamphetamine. Finally, the court finds that consideration of the § 3553(a) factors in defendant's case warrant a reduction in his sentence.

      *i.*    *A § 3582(c)(2) hearing is limited to the original sentencing court record.*

In *Dillon*, the Supreme Court established the basis for a rule limiting consideration to the original sentencing court record in sentencing modification proceedings under § 3582(c)(2). In describing the two-step inquiry to be undertaken in determining whether a defendant is entitled to a sentence reduction under § 3582(c)(2), the court emphasized the limited nature of such proceeding, stating that "[b]y its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding." 560 U.S. at 824; *see also United States v. Tercero*, 734 F.3d 979, 983 (9th Cir. 2013). Furthermore, the Supreme Court explained that in ruling on such motions district courts do not "impose a new sentence in the usual sense," but merely reduce an otherwise final sentence under certain limited circumstances. *Dillon,* 560 U.S. at 824-25. "Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Id*. at 826; *see also United States v. Aguilar-Canche*, 835 F.3d 1012, 1017 (9th Cir. 2016); *Spears*, 824 F.3d 916.[6]

The limited nature of the proceedings under § 3582 does not preclude further fact-finding where, as here, a specific determination of drug quantity was not made at the time of sentencing. As the Sixth Circuit has persuasively explained:

> If the record indicates that there was a finding of a specific quantity of drugs, either because the original sentencing judge made a specific finding or because the defendant admitted to a specific quantity, then the modification court must use that quantity and determine whether applying the retroactive amendment has the effect of lowering the Guideline range; if it does, the defendant is eligible, and the court proceeds to the second step of the *Dillon* analysis. *Watkins*, 625 F.3d at 281. However, if the record does

---

[6] The Supreme Court also observed that "[b]ecause reference to § 3553(a) is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the proceedings under § 3582(c)(2) into plenary resentencing proceedings." *Dillon,* 560 U.S. at 827.

> not reflect a specific quantity finding but rather a finding or a defendant's admission that the defendant was responsible for "at least" or "more than" a certain amount, then the modification court must make supplemental findings *based on the available record* to determine if applying the retroactive amendment lowers the Guideline range. *Moore*, 582 F.3d at 646. Essentially, the modification court must determine whether a preponderance of the evidence in the record establishes that the defendant is responsible for the quantity of drugs set forth in the retroactive amendment. *The modification court's examination of the record will include the trial transcript, the sentencing hearing transcript, and the portions of the presentence report that the defendant admitted to or the sentencing court adopted. See, e.g., United States v. Blackmon*, 380 Fed. Appx. 498, 501 (6th Cir. 2010) (finding defendant ineligible based on portions of the PSR that he admitted to by failing to object); *see also Moore*, 582 F.3d at 646 (remanding to district court to determine whether the record establishes that defendant was responsible for more than 4.5 kilograms of drugs).

*Valentine*, 694 F.3d at 670 (emphasis added).

This limiting of the consideration of evidence to that which was before the original sentencing court has been adopted by a the majority of the federal circuit courts, including the Fifth, Sixth, Eighth, Tenth, Eleventh, and D.C. Circuits. *See United States v. Wyce*, 741 F.3d 1284, 1284 n.9 (D.C. Cir. 2014) (the modification court may examine "the trial transcript, the sentencing hearing transcript, and the portions of the presentence report that the defendant admitted to or the sentencing court adopted") (quoting *Valentine*, 694 F.3d at 670); *United States v. Benson*, 715 F.3d 705, 708 (8th Cir. 2013) ("[Defendant] was free to present information from the probation office about drug quantity values, or to argue his case for a reduction based on the trial transcript and other records of the original sentencing."); *Hamilton*, 715 at 340 ("So if the district court finds that its original findings were limited to 'at least 1.5 kilograms,' the court will need to go further. It will need to examine the entire record before it at the time of the original sentencing to see if it can make any further findings that will resolve the issue of whether 8.4 kilograms or more of crack cocaine should be attributed to [defendant]. . . the court should not consider any evidence or materials beyond those that were before it at the time of the original sentence proceeding."); *Battle*, 706 F.3d at 1319 ("[W]e simply determine that the supplemental drug quantity calculations made by the district court at [defendant's] § 3582(c)(2) proceeding were unsupported by the facts found at his original sentencing."); *Valentine*, 694 F.3d at 672

("[T]he modification court must look at the record of the original sentencings and determine if a preponderance of the evidence indicates that Defendants were responsible for 4.5 kilograms."); *United States v. Hernandez*, 645 F.3d 709, 712 (5th Cir. 2011) (where the sentencing judge adopted the drug quantity finding of the PSR, the district court did not abuse its discretion in refusing to grant an evidentiary hearing to allow defendant to challenge the drug quantity for which he was found responsible in ruling on a § 3582(c)(2) motion); *United States v. Moore*, 582 F.3d 641, 646 n.2 (6th Cir. 2009) ("Moore was sentenced on May 1, 2000, while his testimony was given in August 2000. The district court should make its decision based on the information that was available at the time of sentencing, although we acknowledge the judge has the discretion to deny Moore's [§ 3582] motion even if his Guidelines range is lowered."); *United States v. Almaraz,* Case No 1:12-CR-0328-(5)-LJO-SKO, 2016 WL 235203, at *2 (E.D. Cal. Jan 20, 2016) ("[T]he court finds it appropriate to examine the record in order to establish, conclusively, the drug quantity attributable to Defendant for purposes of the instant motion."); *but see United States v. Rios,* 765 F.3d 133, 138-39 (2d Cir. 2014) (where the record at sentencing contained only the parties' stipulation that at least 1.5 kilograms were at issue, it was proper for the district court to make its ultimate finding that 8.4 kilograms were attributable to defendant after holding an evidentiary hearing on his § 3582 motion).

Thus, as another judge of this court has stated:

> If the Court must engage in further fact finding, the Court cannot make a determination that is inconsistent with a determination made a sentencing. [*United States v. Woods*, 581 F.3d 531, 538 (7th Cir. 2009)]. *So long as the Court confines it[s] inquiry to the material available to the sentencing court, Woods*, 581 F.3d at 538-539, the manner in which the Court determines that quantity and the determination of whether to hold a hearing fall within the Court's "broad discretion in how to adjudicate § 3582(c)(2) proceedings …" *Rios*, 765 F.3d at 138 (citation omitted). *See also United States v. Battle*, 706 F.3d 1313, 1318–1319 (10th Cir. 2013) (holding that the quantity determination must be supported by the facts known to the court at the original sentencing.)

*United States v. Moreno*, No. 1:04-cr-05185-AWI-1, 2015 WL 6709022, at *2 (E.D. Cal. Nov. 3, 2015) (emphasis added); *See also United States v. Curiel*, CR. NO. 2:05-0113-01 WBS, 2016 WL 6819245, at *2 (E.D. Cal. Nov. 16, 2016) (Concluding that even though the original PSR stated

11

that a conspiracy involved more than 5 kilograms, unless the sentencing judge made a specific finding that the defendant was responsible for that larger amount, the court in ruling upon a subsequent § 3582 motion was limited to consideration of only the "more than 1.5 kilograms" of actual methamphetamine stipulated to by the defendant in his plea agreement.)

Based upon the weight of authority, the undersigned concludes that in considering the present motion its inquiry must be limited to the record that was before the court at the time the defendant was originally sentenced. Accordingly, this court will confine its inquiry to the original sentencing record and will examine whether a preponderance of evidence in that record establishes that defendant Acosta was responsible for at least 4.5 kilograms of actual methamphetamine.

        *ii.*    *Sprague does not apply.*

In reaching the conclusion stated above, the court rejects defendant's argument that the Ninth Circuit's decision in *Sprague* requires consideration of new evidence in this case. Specifically, the court finds that *Sprague* has been undermined by the Supreme Court's decision *Dillon*. As noted above, in *Sprague* the Ninth Circuit remanded a § 3582(c)(2) motion based upon Amendment 484 with instructions that the district court "may consider the supplemental declaration by the defendant's expert" and "calculate the base offense level by other evidence." *Id*. at 1306–07. However, the Supreme Court's prohibition against "plenary resentencing proceedings" under § 3582(c)(2), subsequently announced in *Dillon,* and its emphasis on the "limited nature" of hearings under that provision is directly at odds with *Sprague*'s authorization of consideration of supplemental evidence on a motion for relief under§ 3582(c)(2). Indeed, the Supreme Court's decision in *Dillon* has served as the basis of many subsequent decisions precluding consideration of new evidence at § 3582(c)(2) hearings. *See United States v. Kennedy*, 722 F.3d 439, 442 (D.C. Cir. 2013); *Benson*, 715 F.3d at 708; *Battle*, 706 F.3d at 1318; *Valentine*, 694 F.3d at 669–70; *Hernandez*, 645 F.3d at 711–13. Finally, the Eighth Circuit has explicitly recognized that the Supreme Court's decision in *Dillon* undermined the holding of *Sprague*:

> The Ninth Circuit did state summarily in *United States v. Sprague*, 135 F.3d 1301 (9th Cir. 1998), that once a defendant shows that a retroactive guideline amendment "is applicable," the burden of proof "shifts to the government to establish the base offense level,

12

> that is, the weight of the controlled substance." *Id.* at 1307. No other circuit has adopted this view, however, and the Supreme Court recently made clear that § 3582(c)(2) does not authorize a "plenary resentencing proceeding," but permits "only a limited adjustment to an otherwise final sentence." *Dillon v. United States*, 560 U.S. 817, 824–27 (2010).

*Benson*, 715 F.3d at 708.[7]

Even though the decision in *Sprague* was not expressly overruled by the Supreme Court in *Dillon,* that intervening Supreme Court authority controls the resolution of the issue now before the court. *See United States v. Nachtigal*, 507 U.S. 1, 2–6 (1993) (holding that the lower court erred by not finding the case controlled by intervening Supreme Court authority even though circuit authority had not been expressly overruled); *Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) ("[T]he issues decided by the higher court need not be identical in order to be controlling. Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.").

Moreover, even if the decision in *Sprague* was unaffected by *Dillon*, it is not controlling in the present case because *Sprague* involved a resentencing based on USSG Amendment 484 rather than Amendment 782 and there are substantive differences between the two. Amendment 484 established an entirely new method for calculating drug quantity for Sentencing Guideline purposes, while Amendment 782 merely changed the guideline range for different drug quantity amounts without modifying the method for determining drug quantity. Prior to Amendment 484, the Ninth Circuit had used the gross weight of a mixture containing methamphetamine and liquid by-products to determine the relevant drug quantity. *See United States v. Innie*, 7 F.3d 840,

---

[7] It is also of note that the Fifth Circuit, which at one time had concluded that evidentiary hearings were appropriate to determine whether defendants qualified for a modification of sentence under Amendment 484, just as the Ninth Circuit had done in *Sprague, s*ee *United States v. Towe*, 26 F.3d 614, 617 (5th Cir. 1994), reversed field on that issue following the Supreme Court's decision in *Dillon. See Hernandez*, 645 F.3d at 712 & n.3 (Concluding that a district court does not abuse its discretion in denying an evidentiary hearing to decide the amount of crack cocaine for which the defendant was responsible under USSG Amendment 706 and observing "[defendant] has not claimed in this appeal that based on the record and the sources cited by the PSR it could not reasonably be concluded that he was responsible for more than 4.5 kg of crack . . . . [u]nder *Dillon,* that is where our inquiry ends.").

1    845–47 (9th Cir. 1993) (affirming the use of total weight of liquid mixture containing
2    methamphetamine in sentencing).  Amendment 484, rejected that approach and instead adopted
3    the "marketable material approach," excluding from the drug quantity weight for base offense
4    level purposes, all liquids and materials that must be removed in the drug processing stage.  *See*
5    *Sprague*, 135 F.3d at 1305–06.
6          Prior to Amendment 484, sentencing courts in the Ninth Circuit would not have
7    considered the composition of such mixtures rather only the gross weight of the
8    methamphetamine when mixed with packaging material and waste washings.  Therefore, in
9    applying Amendment 484, sentencing courts were very much dependent on new evidence in
10   determining drug quantities in cases where packaging material or waste washings were present.
11   Amendment 782, in contrast, merely lowered the sentencing guideline ranges corresponding to
12   particular drug quantities as had already been determined at the time of sentencing.  Therefore,
13   the original sentencing court in a case with a motion to modify sentence in light of Amendment
14   782 will always have made some kind of drug quantity determination that can be referred to in
15   considering a motion to modify sentence.  Thus, even if *Sprague's* holding in the context of
16   applying Amendment 484 remains unaffected by the Supreme Court's decision in *Dillon*, it does
17   not control resolution of the issue before this court in ruling upon defendant's motion for a
18   reduction in his sentence under Amendment 782.
19         *iii.*     *Dillon Step One: Eligibility for Relief Under Amendment 782.*
20         The court finds that there is simply insufficient evidence in the sentencing court record
21   upon which to base a finding that, by a preponderance of the evidence, defendant Acosta's
22   offense involved 4.5 kilograms or more of actual methamphetamine.  As noted, defendant's PSR
23   states that law enforcement agents found nine pounds of finished methamphetamine at 805
24   Rosemore Avenue during the execution of a search warrant after defendant was arrested leaving
25   that residence.  (PSR at 6, ¶ 14.)  Nine pounds equates to approximately 4.08 kilograms.
26   However, as defendant notes, there is no information in the PSR as to the purity level of this nine
27   pounds of finished methamphetamine.  Rather, even in contending that the nine pounds seized
28   constituted 2.629 kilogram of actual methamphetamine, the government has had to rely solely on

14

1    evidence that was not before the sentencing court and therefore cannot be considered by this court
2    in ruling on the pending motion. (*See* Doc. No. 402–1, exhibit 7.)

3            Turning to the evidence or information that was before the court at the time of sentencing,
4    defendant's PSR notes that as part of the overall investigation and in addition to the seizure of
5    nine pounds at the Rosemore Avenue address, officers later discovered an operational laboratory
6    on Berkeley Avenue. (PSR at 6, ¶13.) It also stated that, "[a]gents estimated that the laboratory
7    had a production capacity of approximately 30 pounds of methamphetamine." (*Id.*)[8] However,
8    the only link suggested in defendant's PSR between defendant Acosta and the Berkeley Avenue
9    drug laboratory was the statement that on September 18, 2004, defendant was observed by agents
10   driving to the Berkeley Avenue location and returning to 805 Rosemore Avenue with one of his
11   co-defendants. (*Id.*) It was two other codefendants who were arrested later that same day at the
12   Berkeley Avenue laboratory. (*Id.*) The PSR does not even indicate whether defendant entered
13   the Berkeley Avenue residence. While the PSR does state that defendant Acosta purchased items
14   related to the manufacture of methamphetamine, it does not indicate that he delivered anything to
15   the Berkeley Avenue residence. Likewise, the factual basis for the plea as set forth in the
16   agreement of the parties is quite ambiguous, referring only to a laboratory where others, not
17   including defendant Acosta, were in the initial process of manufacturing methamphetamine as
18   having "the capacity to manufacture *and/or* had manufactured, in excess of 1.5 kilograms of
19   actual methamphetamine." (Doc. No. 276 at 5) (emphasis added). That language could be
20   interpreted as referring to 4.08 kilos (which the government now represents was only 2.629 kilos
21   of actual methamphetamine) or to some amount expected to result from the initial stage of a
22   manufacturing process interrupted by authorities. In any event, there was clearly no finding by
23   the sentencing court that defendant Acosta was responsible for in excess of 4.5 kilograms of
24   actual methamphetamine nor is there any evidence or information in the sentencing record from
25   /////

---

[8] Defendant argues that "there is no evidence from which to conclude that Acosta's guideline calculations should include this lab or, even if it did, what amount is attributable to Acosta." (Doc. No. 404, 7:23–27.)

15

which this court could now make such a finding by a preponderance of the evidence standard.[9]

Relying solely on the evidence that was before the sentencing court and employing the preponderance of the evidence standard, the undersigned can only find that more than 1.5 kilograms but less than 4.5 kilograms of actual methamphetamine was involved in defendant Acosta's offense. Given this finding, under Sentencing Guideline Amendment 782 defendant Acosta's total adjusted offense level is reduced by two levels from thirty five to thirty three. With a criminal history category III, an adjusted offense level of thirty-three reduces defendant's guideline range to one calling for a term of imprisonment of 168 to 210 months.[10] Accordingly, defendant Acosta is eligible for relief under Amendment 782.

      *iv.*    *Dillon Step Two: Consideration of § 3553(a) Sentencing Factors.*

Having determined that defendant Acosta is eligible for a sentence reduction, the court must consider the § 3553(a) sentencing factors in deciding whether, in the exercise of its discretion, a sentence reduction is warranted under the circumstances of this case. As a preliminary matter, the court concludes that at this second step of the analysis it is also not appropriate to consider new evidence relating to the defendant's offense of conviction in making this determination. *See Dillon*, 560 U.S. at 827 ("Because reference to § 3553(a) is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the proceedings under § 3582(c)(2) into plenary resentencing proceedings.").

---

[9] Again, on the question of the production capacity of the Berkeley Avenue laboratory, the government relies solely on evidence that was not before the sentencing court and therefore cannot be considered by this court in ruling on the pending motion. As previously noted, the government relies in this regard upon the opinion rendered by a forensic chemist that, based upon the 9.355 kilograms of pseudoephedrine present there, the Berkeley Avenue laboratory had a production capacity of between 4.677 kilograms to 8.656 kilograms of methamphetamine. (See Doc. No. 402–1, exhibit 5.) Notably, this expert opinion was not produced to counsel for defendants who were proceeding to trial until March of 2007, some ten months *after* defendant Acosta was sentenced.

[10] Defendant originally argued that the court should include the sentencing court's overstated criminal history finding resulting in a departure from category III to II. However, in light of the intervening Ninth Circuit decision *United States v. Ornelas*, 825 F.3d 548 (9th Cir. 2016) and the fact that defendant Acosta has less than twelve months left to serve on the sentence originally imposed, defendant withdrew that request and has asked that the court to reduce his sentence from 180 to 168 months. (Doc. No. 408 at 2.)

In this case, after considering all of the § 3553(a) factors the court finds that sentence reduction is warranted. Pursuant to the parties plea agreement, the sentencing court originally found that defendant's criminal history category was II rather than III resulting in a guideline range calling for a term of imprisonment of 188 to 235 months, and then departed downward eight months from the low end of that guideline range to sentence defendant to a 180 month term of imprisonment. Defendant Acosta's PSR does not mention the any involvement of weapons or violence in connection with his offense, nor was he found to have played a managerial or supervisory role in its commission. (PSR at 7-8.) Defendant points out that he has conducted himself well in federal prison as evidenced by the Bureau of Prison's decision to designate him to serve his sentence in a low-security level institution. Moreover, defendant Acosta has already served eleven years in prison and asserts that he expects to be deported at the completion of his sentence. The court finds that the § 3553(a) factors support a reduction of this defendant's sentence to a term of 168 months, at the low end of the amended guideline range of 168 to 210 months.

## CONCLUSION

For all of the reasons set forth above:

(1) Defendant Acosta's motion and amended motion brought pursuant to 18 U.S.C. § 3582(c)(2) (Doc. Nos. 392, 401) are granted;

(2) The term of imprisonment imposed on May 1, 2006 is reduced to a term of 168 months. If this sentence is less than the amount of time defendant Acosta has already served as of the date of this order, the sentence is reduced to a time served sentence;

(3) All other terms and provisions of the original judgment remain in effect. The Clerk of the Court is directed to forthwith prepare an AO247 form reflecting this reduction in sentence, and to serve certified copies of that AO247 on the United States Bureau of Prisons and the United States Probation Office;

/////
/////
/////

(4) Unless otherwise ordered, defendant Acosta shall report to the United States Probation Office within seventy-two hours after his release from the custody of the Bureau of Prisons; and

(5) The Clerk of the Court is directed to close this case as to defendant Acosta.

IT IS SO ORDERED.

Dated: **December 29, 2016**

UNITED STATES DISTRICT JUDGE